Catherine Cabalo, Esq. (CA Bar No. 248198)
Peiffer Wolf Carr & Kane
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
Email: ccabalo@pwcklegal.com

*Attorneys for PLAINTIFFS*
*Abdul Nevarez and Priscilla Nevarez*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CITY OF FAIRFIELD and DOES 1-10, Inclusive,<br><br>                    Defendants. | Case No.<br><u>Civil Rights</u><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES<br><br>1. Violations of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)<br>2. Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br>3. Violation of California Government Code Section 11135<br>4. Violations of the California Unruh Act (Cal. Civil Code § 51 *et seq.*) |

COME NOW Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ (together "PLAINTIFFS") on behalf of themselves and all other similarly situated disabled persons in this civil rights action, and hereby complain of defendant CITY OF FAIRFIELD and DOES 1-10 as follows:

**INTRODUCTION**

1.      This is a civil rights action involving the lack of disabled access to the golf programs and golf courses owned, operated, and/or leased by defendant CITY OF FAIRFIELD (the "CITY"), including but not limited to the lack of disabled access to the building, structure,

facility, complex, property, land, development, and/or surrounding business complex known as "Paradise Valley Golf Course," located at or about 3950 Paradise Valley Drive, Fairfield, California 94533 (hereinafter the "Paradise Valley"). Upon information and belief, the CITY is an owner, operator, lessor, and/or lessee of Paradise Valley.

2.      Plaintiff ABDUL NEVAREZ (sometimes "MR. NEVAREZ") is physically disabled and requires the use of a wheelchair. MR. NEVAREZ was an avid golfer prior to the injury that rendered him disabled. He has continued golfing to remain physically active after his injury, as it is one of the only recreational physical activities that he is able to enjoy regularly with his family and friends.

3.      Plaintiff PRISCILLA NEVAREZ (sometimes "MS. NEVAREZ") is MR. NEVAREZ's wife. She accompanies MR. NEVAREZ golfing and often assists with making arrangements for them to golf.

4.      At all times relevant herein and continuing, PLAINTIFFS were denied equal protection of the law and were denied civil rights under state and federal law. As set forth in detail herein, PLAINTIFFS were denied rights to "full and equal" access at the CITY's golf courses and to the benefits of "programs, services and activities" offered by the CITY because the CITY's programs, services, and activities were not "accessible to and useable by" persons with disabilities, such as MR. NEVAREZ, who requires use of accessible facilities. The denial continued despite the CITY having actual notice of the inaccessible conditions, demonstrating its deliberate indifference and/or intentional discrimination toward PLAINTIFFS. PLAINTIFFS seek injunctive relief to require the CITY to make its specified facilities accessible to disabled persons and to ensure that the "programs, services and activities" offered by the CITY be provided in a non-discriminatory manner to mobility disabled persons, including but not limited

to: providing and maintaining safe accessible golf carts adequate to serve all golf courses that the CITY owns, operates, and/or leases; modifying its programs, services, and activities to provide for accessible tee time booking policies and procedures for all golf courses that the CITY owns, operates, and/or leases; and removing all architectural barriers at Paradise Valley and all other golf courses that the CITY owns, operates, and/or leases. PLAINTIFFS seek damages and injunctive relief requiring provision of access under the Americans with Disabilities Act of 1990 ("ADA") and Rehabilitation Act of 1973 and injunctive relief for full and equal access and statutory damages under California law. PLAINTIFFS also seek declaratory relief and recovery of reasonable statutory attorney fees, litigation expenses and costs under federal and state law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the ADA, 42 USC §§ 12101 *et seq*. Pursuant to supplemental jurisdiction, attendant and related causes of action arising from the same facts are also brought under the Unruh Civil Rights Act, California Civil Code §§ 51, 52.

6.      Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this District and that PLAINTIFFS' causes of action arose in this District.

7.      This case should be assigned to the San Francisco/Oakland Division of the Northern District of California, as the real property which is the subject of this action is located in this intradistrict and PLAINTIFFS' causes of action arose in this intradistrict.

## PARTIES

8.      At all times relevant to this Complaint, MR. NEVAREZ is qualified as a "physically disabled person" and a "person with a disability," within the meaning of the ADA, §

504 of the Rehabilitation Act of 1973, and Unruh Civil Rights Act. MR. NEVAREZ's right leg is amputated above the knee and he has significant nerve damage in his left leg and left arm. He requires use of a wheelchair for mobility. He possesses a disabled parking placard and/or license plate issued by the State of California, entitling him to park in designated accessible and van-accessible parking spaces.

9.      Plaintiff PRISCILLA NEVAREZ does not have a disability, but she assisted MR. NEVAREZ with and accompanied him to all the events described in this Complaint.

10.      The CITY and DOES 1-5 are public entities subject to Title II of the ADA, the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint, who are the owners, operators, lessors, and/or lessees of Paradise Valley and other CITY golf courses. Defendant DOES 6-10 are employees and/or agents of the CITY and/or its golf courses. The true names or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1-10 are unknown to PLAINTIFFS, who therefore sue said defendants by such fictitious names. PLAINTIFFS are informed and believe, and thereon allege, that each of the fictitiously named defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to PLAINTIFFS as herein alleged. PLAINTIFFS pray for leave of court to amend this Complaint to show such true names and capacities when the same have been ascertained.

11.      PLAINTIFFS do not know the relative responsibilities of the CITY and DOES 1-10 in the ownership and operation of the facilities herein complained of, but is informed and believes, and on such information and belief alleges, that at all times mentioned herein, defendants, and each of them, were the agents, servants, employees, and representatives of each of the other defendants, and performed all acts and omissions stated herein within the scope of

such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other defendants, and are responsible in some manner for the acts and omissions of the other defendants in proximately causing the damages complained of herein. All actions alleged herein were done with the knowledge, consent approval and ratification of each of the defendants herein, including their managing agents, owners, and representatives.

## **FACTUAL ALLEGATIONS**

12.     The CITY has discriminated against PLAINTIFFS because its golf courses and tee time booking policies do not comply with the requirements of the ADA, Rehabilitation Act of 1973, California Government Code § 11135, and Unruh Civil Rights Act. The CITY has failed and refused to provide full and equal access to the services, privileges, benefits and advantages that it provides to nondisabled persons at its golf courses, including Paradise Valley. The CITY failed to make reasonable accommodations for MR. NEVAREZ, even though doing so is feasible and readily achievable given the CITY's resources, and the CITY cannot demonstrate that making the requested accommodations would fundamentally alter the nature of the services, programs, or activities offered at its golf courses.

13.     The CITY has also discriminated against PLAINTIFFS by failing to remove numerous architectural barriers at Paradise Valley and its other golf courses that prevent wheelchair users from golfing at the courses and utilizing the services offered in the clubhouse, restaurant, and other buildings related to Paradise Valley and other CITY golf courses.

14.     The CITY has also discriminated against PLAINTIFFS by failing to abide by applicable federal and state access standards in constructing and/or altering facilities at Paradise Valley and its other golf courses.

15.     The CITY has knowingly and intentionally denied persons with mobility disabilities the full and equal enjoyment of its businesses, services, privileges, advantages, and accommodations. The CITY has engaged in this discriminatory conduct despite the fact that its services, business practices, contracts, and contractual relationships could easily be brought into compliance with the ADA, Rehabilitation Act of 1973, California Government Code § 11135, and the Unruh Civil Rights Act, and despite the fact that the CITY is and has been fully aware that its conduct and business practices have and continue to cause harm to persons with mobility disabilities including segregation and exclusion. The foregoing violations of the ADA, Rehabilitation Act of 1973, California Government Code § 11135, and Unruh Civil Rights Act are illustrated by the experiences of Plaintiff, which are set forth in the paragraphs below.

16.     PLAINTIFFS have attempted to visit Paradise Valley as paying customers multiple times in the last two years and other CITY golf courses over two years ago, and they encountered barriers (both physical and intangible) that interfered with, if not outright denied, their ability to use and enjoy the goods, services, privileges and accommodations offered at the CITY's golf courses.

17.     On December 27, 2018, MS. NEVAREZ booked a December 28, 2018 tee time at Paradise Valley for her and MR. NEVAREZ. She called Paradise Valley to inquire whether the course had acquired an accessible golf cart. The male employee who answered the phone said that he couldn't answer MS. NEVAREZ's question, so he put her on hold and transferred her to someone who said his name was "Brian." Brian confirmed that the course did not have an accessible golf cart. Brian went on further to say that he has worked at Paradise Valley for six (6) years and Paradise Valley has never had an accessible golf cart during his employment there. MS. NEVAREZ then asked Brian if the course would acquire one. Brian responded, "no,"

explaining that Paradise Valley gets fleets with standard carts only. Upset and frustrated, MS. NEVAREZ told Brian that she and MR. NEVAREZ would be forced to cancel their tee time.

18.     On January 21, 2019, PLAINTIFFS emailed management at Paradise Valley, requesting that the course obtain an accessible golf cart so that MR. NEVAREZ would be able to golf at the course like any other able-bodied person. They did not receive any response from Paradise Valley.

19.     On February 4, 2019 and February 17, 2019, PLAINTIFFS emailed the course to follow up on their request. They received no response from anyone at Paradise Valley.

20.     On November 14, 2019, MS. NEVAREZ called Paradise Valley to confirm whether it had acquired an accessible golf cart and to inquire about available tee times the next morning. The female employee who answered the phone explained that Paradise Valley requires 48-72 hours of notice to reserve a ParaGolfer accessible golf cart ("ParaGolfer"). MS. NEVAREZ asked to speak with a manager, and the employee connected her with "Sam." Sam said he had to check with the "company" where Paradise Valley gets the ParaGolfer from and promised to call PLAINTIFFS back. He called MS. NEVAREZ back and said the ParaGolfer would be available for them by 9:00 a.m. the next day, in advance of a 10:15 a.m. tee time they booked.

21.     On November 15, 2019, PLAINTIFFS arrived at Paradise Valley for their 10:15 a.m. tee time. When they arrived, they parked in the first designated disabled "accessible" parking spot they saw open, however the spot did not have an accessible path of travel to the building where the Pro Shop is located. PLAINTIFFS were forced to move to another marked accessible parking spot with better access to the building.

22.     Upon entering the Pro Shop, PLAINTIFFS noticed that the Pro Shop did not have an accessible counter to check in, as the counter was too high for MR. NEVAREZ to check in independently. MS. NEVAREZ was forced to check in for both of them and pay with her card. "Chris," the employee checking PLAINTIFFS in, told them that they could golf at the course but would need to provide the course at least 48 hours of notice to reserve the ParaGolfer. PLAINTIFFS explained to Chris that 48 hours of notice is not always possible with their schedule, and that if there are tee times available that work for their schedule, which they often determine the day of or within two days, they should be able to golf at Paradise Valley like everyone else.

23.     After MS. NEVAREZ paid for the tee time, PLAINTIFFS went back to their truck to load up their clubs and for MS. NEVAREZ to break down MR. NEVAREZ's wheelchair to leave in their truck while they golfed. Chris brought the ParaGolfer out to PLAINTIFFS' truck, and MR. NEVAREZ asked him where they acquired the ParaGolfer from. Chris noted that the ParaGolfer was borrowed from Franklin Canyon Golf Course ("Franklin Canyon"), which is located approximately 30 miles away in Hercules, California.

24.     After PLAINTIFFS finished golfing, Chris approached them and asked how it went. PLAINTIFFS told him that it was a beautiful course and that they would like to golf there again soon. Chris again warned PLAINTIFFS that they would need to give Paradise Valley at least 48 hours of notice to reserve the ParaGolfer. MS. NEVAREZ reiterated PLAINTIFFS' earlier response that their schedule does not always allow them to provide such long notice in advance and that they would like to be able to golf there when their schedules allow if tee times are available just like everyone else.

25.    On or about November 18, 2019, PLAINTIFFS booked a 9:36 a.m. tee time on November 22, 2019 over the phone with Paradise Valley. At the time of their call on November 18th, PLAINTIFFS advised Paradise Valley that they would need the ParaGolfer.

26.    MS. NEVAREZ called Paradise Valley in the early morning on November 22, 2019 to cancel the tee time because of she had to work that day. The employee she spoke with on the phone confirmed the tee time was cancelled. While MS. NEVAREZ was at work, she received several missed calls and a voice mail from Paradise Valley. Fearing an emergency or other time-sensitive problem, she stepped out of work to call Paradise Valley back, although she had already confirmed that the tee time was canceled. Upon information and belief, MS. NEVAREZ spoke with "Chris" when she called back, and she told him that she had confirmed canceling the tee time earlier that morning. She also told him that it is difficult for her and MR. NEVAREZ to schedule that far ahead of time, because her work schedule always changes. Chris asked MS. NEVAREZ to send an email confirming that she had cancelled the tee time. She responded that she did not have time to send an email and noted that she should not have to send an email after all of the time she had already spent cancelling the tee time and calling Paradise Valley back after its several calls to her while she was at work. MS. NEVAREZ was confused by Chris' request and upset that Paradise Valley likely does not ask other golfers to spend as much time (i.e. sending an email confirmation in addition to a confirmed call to the course) to cancel a tee time.

27.    On January 28, 2020, MS. NEVAREZ called Paradise Valley and spoke with "Brian" to book a tee time for her and MR. NEVAREZ on January 31, 2020 at 9:27 a.m. to accommodate a group of four. She advised Brian that MR. NEVAREZ would need the

ParaGolfer. Brian responded that it would not be a problem and that he would let his manager know to make sure they had the ParaGolfer for MR. NEVAREZ to use.

28.     On January 30, 2020 MR. NEVAREZ called Paradise Valley and confirmed the 9:27 a.m. tee time and that he and his party would be there on time.

29.     On January 31, 2020 at approximately 6:30 a.m., MS. NEVAREZ called Paradise Valley to confirm the ParaGolfer had been delivered. The male employee who answered the phone said they were picking the ParaGolfer up "right now" and it would be at the course for their tee time. MS. NEVAREZ emphasized that she and MR. NEVAREZ were traveling all the way from Antioch, so she was calling to make sure there would be no issues.

30.     PLAINTIFFS drove approximately 45.5 miles from Antioch and arrived well in advance of their 9:27 a.m. tee time so that MR. NEVAREZ would have time to hit balls at the driving range. The weather forecast indicated temperatures would be in the low 70s that day, perfect conditions for golfing and somewhat unusual for what is often wet conditions during the winter. PLAINTIFFS' son was with them, and they were all looking forward to spending a beautiful day at Paradise Valley golfing with each other and a friend.

31.     PLAINTIFFS parked in an accessible parking space and decided that MR. NEVAREZ would wait in the van while PLAINTIFFS' son and MS. NEVAREZ went into the Pro Shop to check in and pay, given MR. NEVAREZ's earlier issues with the lack of an accessible counter at the Pro Shop.

32.     An employee at the Pro Shop, "Sam," helped MS. NEVAREZ and PLAINTIFFS' son. MS. NEVAREZ told Sam that she was checking in for MR. NEVAREZ, herself, and their son, and that MR. NEVAREZ would need a ParaGolfer. She asked Sam if the ParaGolfer was there and he responded "Yes, it is right outside." She told Sam that she would take it to MR.

NEVAREZ once she paid. She paid $50.00 for the tee time and a cart, and Sam gave MS. NEVAREZ the key for the ParaGolfer. MS. NEVAREZ and her son went outside to get the ParaGolfer to bring it to MR. NEVAREZ. However, as soon as MS. NEVAREZ and her son went outside, she noticed that the knee brace for the ParaGolfer was missing. She checked in and around the ParaGolfer but did not see the knee brace anywhere. She then went back into the Pro Shop to let Sam know that the knee brace was missing, and that MR. NEVAREZ cannot golf without it. Sam called the driver that brought the ParaGolfer from Franklin Canyon. The driver checked his truck and confirmed that the knee brace was not there.

33.     Upon information and belief, the CITY does not have a ParaGolfer of its own, and as such, it has not trained any of its employees on the use or maintenance of the ParaGolfer. Therefore, Sam was not familiar with what the knee brace looked like and could not independently check the Pro Shop premises or where the ParaGolfer had been dropped off to look for the knee brace. MS. NEVAREZ had to pull up a picture of the ParaGolfer on her phone to show Sam the piece that was missing.

34.     MS. NEVAREZ watched as Sam called Franklin Canyon, who checked and confirmed that the knee brace was in their Pro Shop and had not been delivered with the ParaGolfer to Paradise Valley. Sam told MS. NEVAREZ that someone from Paradise Valley could go pick it up, which would delay PLAINTIFFS' tee time about 10 minutes. She responded that there was no way a delay of only 10 minutes was possible, given the distance from Paradise Valley to Franklin Canyon. MS. NEVAREZ checked travel time on a map application on her phone, which confirmed it would take 33 minutes to get there one way, or over an hour to make it there and back. She told Sam that it would not work for them to try to retrieve the knee brace from Franklin Canyon.

35.     MS. NEVAREZ went out to the van to let MR. NEVAREZ know that the knee brace was at Franklin Canyon. PLAINTIFFS were extremely frustrated and angry that they and their son got up extremely early to make it to Paradise Valley from Antioch in enough time to allow MR. NEVAREZ to warm up at the driving range. PLAINTIFFS' son had plans in the afternoon, and they could not start later that day or else they would be stuck in Friday traffic to get back to Antioch.

36.     MR. NEVAREZ called his friend to let him know that they couldn't play because Paradise Valley did not have the knee brace for the ParaGolfer. MS. NEVAREZ went back in the Pro Shop to let Sam know that she and her family were leaving and to get a refund for the fees that she had just paid. MS. NEVAREZ complained to Sam about the situation – that Paradise Valley should have its own ParaGolfer rather than borrowing one from another course; that she specifically called early in the morning to confirm the ParaGolfer was ready because they were coming all the way from Antioch; that she had taken the day off to golf with her family; and that this was an extremely upsetting a waste of a day, including sitting in traffic to get there and paying for gas for the long trip and the bridge toll. MS. NEVAREZ also told Sam that MR. NEVAREZ competes and wants to play often to improve his golf handicap.

37.     Sam processed the refund and offered to give PLAINTIFFS a complimentary round. MS. NEVAREZ responded that without consistent access to a ParaGolfer, there is no point in giving them a complimentary round. Nonetheless, upon MS. NEVAREZ exiting, Sam gave her two cards with one free tee time on each card. When MS. NEVAREZ got back to the van, MR. NEVAREZ was very upset. With his disabilities, golfing is one of the only activities that he can do. PLAINTIFFS were particularly upset that although they made advance plans, which is difficult for MS. NEVAREZ because of her work schedule, and abided by Paradise

Valley's 48-hour notice requirement, Paradise still failed to provide an accessible golf cart in working order. In fact, PLAINTIFFS gave Paradise Valley *four days* of notice, communicated with the course multiple times, including the morning of their tee time date.

38.     To date, PLAINTIFFS have not received any response from Paradise Valley regarding their complaints about Paradise Valley's inability to provide an accessible golf cart to disabled golfers. PLAINTIFFS allege continuous and ongoing discrimination.  They want to – and plan to – golf at Paradise Valley and the CITY's other golf courses, and they are frustrated and anxious for the CITY to provide access to safe and well-maintained accessible golf carts, accessible facilities, and to provide reasonable modification in policies, practices, and procedures, as alleged herein, so that they may golf the at all of the CITY's golf courses. PLAINTIFFS will continue to be injured by being deterred from visiting the CITY's golf courses for all times occurring after the filing of this Complaint to the time of final judgment.

39.     The barriers described above are only those that PLAINTIFFS encountered.  They are presently unaware of other barriers which may in fact exist at Paradise Valley and other CITY golf courses and relate to Mr. NEVAREZ's disabilities. The barriers to access described in this Complaint are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant(s)/expert(s), per the Ninth Circuit's standing standards under *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) and *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (*en banc*). These barriers to access render the CITY's golf courses and related premises inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. PLAINTIFFS will seek to amend this Complaint once such additional barriers are identified, as it is their intention to have all barriers removed which

exist at Paradise Valley and other CITY golf courses that limit full and equal access for persons with mobility disabilities.

40.     PLAINTIFFS' numerous complaints and claims to the CITY's and Paradise Valley's employees and representatives have been ignored or mishandled.  PLAINTIFFS allege that it would be a futile gesture to provide further notices of violations relating to their continued, attempted visits and deterrence, which are certain to occur on a regular basis following the filing of this Complaint. Therefore, PLAINTIFFS will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

41.     The CITY knew, or should have known, that these policies, elements, and physical structures were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled. Moreover, upon information and belief, the CITY has the financial resources to remove these barriers and implement policy changes without much difficulty or expense and make its golf courses accessible to the physically disabled. To date, however, the CITY refuses to remove these barriers and make such changes.

42.     As a result of the CITY's actions and failures to act, as a result of the failure to provide disabled access, and as a result of the CITY's intentional discrimination and deliberate indifference, PLAINTIFFS have suffered a denial of their civil rights, physical injury, psychological and emotional discomfort, pain and suffering, denial of rights to full and equal access to public facilities, and programmatic access, all to their general, special, and statutory damages. MR. NEVAREZ has, on the occasion of each such denial of access, encountered barriers to full and equal access which have caused him difficulty, discomfort, and embarrassment. PLAINTIFFS have been required to seek legal assistance, and seek statutory attorney fees, litigation expenses, and costs, pursuant to federal and state law.

43.     TORT CLAIMS FILED – On June 27, 2019, PLAINTIFFS served claims on the CITY for all events through February 17, 2019. The CITY did not respond in writing to PLAINTIFFS' claims.

44.     SECOND SET OF TORT CLAIMS FILED – Contemporaneously with the filing of this Complaint, PLAINTIFFS sent claims to the CITY for all events from February 18, 2019 through the date of filing of this Complaint. PLAINTIFFS acknowledge that the period of time for the CITY to respond to PLAINTIFFS' second set of Tort Claims has not yet expired and thus, reserve the right to amend this Complaint accordingly, based on the CITY's response, if any.

45.     PLAINTIFFS' goal in this suit is a positive one: to make the CITY's golf courses fully accessible to persons with mobility disabilities similar to MR. NEVAREZ and their companions.

**FIRST CLAIM:**
**VIOLATION OF THE ADA, TITLE II**
**[42 USC §§ 12201 *et seq.*]**
**(As to PLAINTIFFS ABDUL NEVAREZ and PRISCILLA NEVAREZ**
**against all defendants)**

46.     PLAINTIFFS replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

47.     Effective January 26, 1992, MR. NEVAREZ was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity", including any state or local government, as defined by 42 U.S.C. § 12131.

48.     Pursuant to Title II of the ADA (42 U.S.C. § 12132), no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to

discrimination by any such entity. MR. NEVAREZ was at all times relevant herein a qualified individual with a disability as defined by the ADA.

49.     Public entity defendant CITY has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described herein, including without limitation failing to ensure that Paradise Valley and other golf courses owned, operated, and/or leased by the CITY are properly accessible to mobility disabled persons; failing to ensure that related public facilities and public accommodations, as described herein, are accessible to mobility disabled persons, including without limitation, abiding by applicable federal access standards for new construction and/or alterations of the subject facilities; failing to remove known architectural barriers at the subject facilities so as to make the facilities "accessible to and useable by" mobility disabled persons; and/or modify its programs, services and activities to make them accessible to mobility disabled persons, including MR. NEVAREZ. As a proximate result of the CITY's actions and omissions, PLAINTIFFS were discriminated against in violation of Title II of the ADA and of the regulations adopted to implement the ADA. PLAINTIFFS suffered damages, compensable under Title II for intentional acts of the CITY, including deliberate indifference, and has suffered physical, mental and emotional damages, including difficulty, discomfort or embarrassment.

50.     Under the regulation governing "[g]eneral prohibitions against discrimination," public entities are prohibited from "providing any aid, benefit, or service" that "afford[s] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is *not equal* to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii) (emphasis added); *see also* 28 C.F.R. § 41.51 (Rehabilitation Act regulations). Public entities are also prohibited from utilizing "methods of administration ... [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities[.]" 28 C.F.R. § 35.130(b)(3)(ii). Public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the

nature of the service, program, or activity." *Id.* § 35.130(b)(7) (emphasis added).  The United States Court of Appeals for the Ninth Circuit Court has been clear that a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076-78 (9th Cir. 2002) (applying Title II to sidewalks even though no implementing regulations specifically addressed sidewalks).

51.     On information and belief, to the date of filing this Complaint the CITY's golf courses continue to be inaccessible for safe and independent use by physically disabled persons such as MR. NEVAREZ. MR. NEVAREZ is unable, so long as such acts and omissions of the CITY continue, to achieve equal access to and use of these golf courses and cannot return to properly use and enjoy them until they are made properly accessible to mobility disabled persons. MR. NEVAREZ alleges that he intends to do so, once legally-required access has been provided. The acts of the CITY have proximately caused and will continue to cause irreparable injury to PLAINTIFFS if not enjoined by this Court.

52.     Plaintiff PRISCILLA NEVAREZ seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203. She has been discriminated against in her attempts to assist MR. NEVAREZ with golfing at the CITY's golf courses. In addition, she has herself experienced discrimination as a result of being forced to assist MR. NEVAREZ with physical access barriers that limit or deny access to the CITY's golf programs, services, activities and facilities, including but not limited to architectural barriers that limit access to Paradise Valley.

53.     Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, PLAINTIFFS are entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 USC § 794a).

WHEREFORE, PLAINTIFFS request relief as outlined below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF THE REHABILITATION ACT OF 1973**
**[29 U.S.C. § 794]**
**(As to Plaintiff ABDUL NEVAREZ only against all defendants)**

54.     PLAINTIFFS replead and incorporate by reference, as if fully set forth again

herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

55.     Upon information and belief, at all times relevant to this action, the CITY and DOES 1-5 were recipients of federal funding within the meaning of the Rehabilitation Act of 1973.  As recipients of federal funds, they are required to reasonably accommodate persons with disabilities in their facilities, programs, and activities.

56.     MR. NEVAREZ is a qualified individual with a disability as defined in the Rehabilitation Act of 1973. 29 U.S.C. § 705.

57.     By its policies and practices of discriminating against and failing to reasonably accommodate patrons with mobility disabilities, the CITY violated Section 504 of the Rehabilitation Act of 1973.  29 U.S.C. § 794.

58.     As a result of the CITY's discrimination and failure to provide reasonable accommodations, MR. NEVAREZ and others with disabilities do not have equal access to the activities, programs, and services of the CITY's golf courses for which they are otherwise qualified.

59.     MR. NEVAREZ's injuries are ongoing so long as the CITY does not modify its policies and procedures and provide fully accessible golf course facilities for him and other persons with similar mobility disabilities.

WHEREFORE, PLAINTIFFS requests relief as outlined below.


**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135**
**(As to Plaintiff ABDUL NEVAREZ only against all defendants)**

60.     PLAINTIFFS replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

61.     Upon information and belief, the CITY and DOES 1-5 receive financial assistance from the State of California. MR. NEVAREZ is a person with a disability within the meaning of

California Government Code section 11135.

62.    The CITY denied MR. NEVAREZ full access to the benefits of its programs and activities for which the CITY receives financial assistance from the State of California, and unlawfully subjected MR. NEVAREZ and other persons with disabilities to discrimination within the meaning of California Government Code section 11135(a) based on their disabilities.

63.    MR. NEVAREZ's injuries are ongoing so long as the CITY does not modify its policies and procedures and provide fully accessible golf course facilities for MR. NEVAREZ and other persons with similar mobility disabilities.

WHEREFORE, PLAINTIFFS request relief as outlined below.

**FOURTH CLAIM:**
**VIOLATION OF UNRUH CIVIL RIGHTS ACT**
**[Cal. Civil Code §§ 51 *et seq.*]**
**(As to PLAINTIFFS ABDUL NEVAREZ and PRISCILLA NEVAREZ**
**against all defendants)**

64.    PLAINTIFFS replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein by reference as if separately repled hereafter.

65.    The Unruh Civil Rights Act, California Civil Code 51(b), provides that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

66.    The CITY and its golf courses are business establishments within the meaning of the Unruh Civil Rights Act. The CITY is an owner and operator of a business establishment.

67.    The CITY violated the Unruh Civil Rights Act by its acts and omissions, as follows:

A.   Failure to construct and/or alter Paradise Valley – and, upon information and belief, other CITY golf courses -- in compliance with state building code and state architectural requirements;

B.   Failure to modify policies and procedures as necessary to ensure PLAINTIFFS full and equal access to the accommodations, advantages, facilities, privileges, and/or services of the CITY's golf courses; and

C.   Violation of the ADA, a violation of which is a violation of the Unruh Civil Rights Act. Cal. Civil Code § 51(f).

68.   PLAINTIFFS have experienced numerous barriers to access at Paradise Valley and the CITY's golf courses, as well as in tee time booking policies and procedures, all of which have caused them major difficulty, discomfort and embarrassment. PLAINTIFFS suffered physical, mental and emotional damages, including statutory and compensatory damages, according to proof.

69.   Further, on information and belief, the CITY's golf courses and their respective premises are also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to PLAINTIFFS citing additional barriers to access after inspection by PLAINTIFFS' access consultant(s)/expert(s), per the Ninth Circuit's standing standards under *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) and *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (*en banc*). PLAINTIFFS pray for leave to amend this Complaint to obtain full injunctive relief as to those barriers that limit or deny full and equal access to persons with mobility disabilities similar to MR. NEVAREZ's.

70.     Further, each violation of the ADA (as pled in the First Claim, *supra*, the contents of which are repled and incorporated herein as if separately repled), also constitutes a separate and distinct violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 52(a).

71.     With respect to the CITY's violations of the Unruh Civil Rights Act that are not predicated on violations of the ADA, the CITY's behavior was intentional: it was aware of and/or was made aware of its duties to refrain from establishing discriminatory policies and barriers that prevent persons with mobility disabilities like MR. NEVAREZ's from obtaining full and equal access to the CITY's golf courses. The CITY's discriminatory practices and/or policies that deny full enjoyment of its golf courses to persons with physical disabilities indicates actual and implied malice and conscious disregard for the rights of MR. NEVAREZ and other similarly disabled individuals. PLAINTIFFS complained on several occasions to the CITY, to no avail. Accordingly, the CITY has engaged in willful affirmative misconduct in violating the Unruh Civil Rights Act.

72.     On information and belief, the access features of the CITY's golf courses and its tee time booking policies and procedures have not been improved since PLAINTIFFS' most recent attempts to golf at a CITY golf course. PLAINTIFFS' injuries are ongoing so long as the CITY does not modify its policies and procedures and provide fully-accessible facilities for PLAINTIFFS and other persons with mobility disabilities similar to MR. NEVAREZ's.

73.     At all times herein mentioned, the CITY knew, or in the exercise of reasonable diligence should have known, that its barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon PLAINTIFFS

and upon other persons with mobility disabilities similar to MR. NEVAREZ, but the CITY failed to rectify the violations, and presently continues a course of conduct in maintaining barriers that discriminate against MR. NEVAREZ, similarly-situated disabled persons, and their companions.

WHEREFORE, PLAINTIFFS request relief as outlined below.

## **PRAYER**

1.      PLAINTIFFS have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. PLAINTIFFS have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the CITY as alleged herein, unless PLAINTIFFS are granted the relief they request. PLAINTIFFS and the CITY have an actual controversy and opposing legal positions as to the CITY's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, PLAINTIFFS pray for judgment and the following specific relief against the CITY:

2.      Issue a declaratory judgment that the CITY's actions, omissions, and failures -- including but limited to: failing to provide and maintain safe and accessible golf carts for use by disabled patrons; failing to implement accessible tee time booking policies and procedures; failing to construct and/or alter Paradise Valley and other CITY golf courses (including parking and pedestrian paths of travel to/from parking) in compliance with federal access standards, state building code, and state architectural requirements; failing to remove known architectural barriers at the CITY's golf courses so as to make the facilities "accessible to and useable by" mobility disabled persons; and failing to make reasonable modifications in policy and practice for PLAINTIFFS and other persons with similar mobility disabilities -- violate the rights of PLAINTIFFS and other similarly situated persons under 42 U.S.C. §§ 12101 *et seq.* and the regulations promulgated thereunder and California Civil Code §§ 51 *et seq.*

3.      Issue an order enjoining the CITY, its agents, officials, employees, and all persons and entities acting in concert with it:

      a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

      b. To provide reasonable accommodation for persons with disabilities in all its programs, services and activities at its golf courses;

      c. To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at its golf courses;

      d. To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including without limitation the provision of a safe, accessible golf cart for the use of persons with disabilities;

      e. To remove all architectural barriers at Paradise Valley and other CITY golf courses;

      f. To maintain such accessible facilities once they are provided;

      g. To train CITY employees and agents in how to accommodate the rights and needs of physically disabled persons at the CITY's golf courses;

      h. To implement nondiscriminating protocols, policies, and practices for accommodating persons with mobility disabilities at CITY golf courses.

4.      Retain jurisdiction over the CITY until the Court is satisfied that the CITY's unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

5.      Award to PLAINTIFFS all appropriate damages, including but not limited to statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6.      Award to PLAINTIFFS all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including but not limited to the ADA, 42 U.S.C.

Complaint

§ 12205; the Unruh Civil Rights Act, California Civil Code § 52; and "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure § 1021.5.

7.      Award prejudgment interest pursuant to California Civil Code § 3291;

8.      Interest on monetary awards as permitted by law; and

9.      Grant such other and further relief as this Court may deem just and proper.


Dated: February 10, 2020          PEIFFER WOLF CARR & KANE

                                  _____/s/ Catherine Cabalo_____
                                  BY: CATHERINE CABALO, Esq.
                                  Attorneys for PLAINTIFFS
                                  ABDUL NEVAREZ and PRISCILLA NEVAREZ




## **DEMAND FOR JURY**

PLAINTIFFS hereby demand a jury for all claims for which a jury is permitted.



Dated: February 10, 2020          PEIFFER WOLF CARR & KANE

                                  _____/s/ Catherine Cabalo_____
                                  BY: CATHERINE CABALO, Esq.
                                  Attorneys for PLAINTIFFS
                                  ABDUL NEVAREZ and PRISCILLA NEVAREZ